JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007

MARK RUMOLD
Assistant Federal Public Defender
Cal. Bar # 279060
mark.rumold@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  vs.<br><br>Stuart Andrew Newell<br><br>  Defendant. | CR-22-01128-PHX-DLR<br><br>**MOTION FOR REVIEW OF DETENTION ORDER**<br><br>(Oral Argument requested) |

Defendant, Stuart Andrew Newell, by and through counsel, hereby moves for review of the Magistrate Judge's order of detention pursuant to 18 U.S.C. § 3145(b).

### I.  BACKGROUND

Mr. Newell has lived in the Phoenix area since he was five years old. *See* Pretrial Services Report at 2 (Dkt No. 6). He attended elementary, middle, and high school in the Phoenix area, in addition to some college and community college. *Id.* At the time of his arrest, he was employed full-time at a restaurant, where he worked for nearly a year. *Id.* He has a minor criminal history – limited to a few prior misdemeanors– and no prior felony convictions. *Id*. 4-5.

Mr. Newell, however, has a serious substance abuse problem. Prior to his arrest, he was using a large amount of fentanyl on a daily basis. *Id.* at 3. He began his habit almost five years ago. *Id.* And he would use other substances, like methamphetamine, to counteract the effects of fentanyl. *Id.* After his arrest, Mr. Newell voluntarily submitted to a drug test, which was positive for fentanyl, MDMA, cocaine, and methamphetamine. *Id.*

He admitted using fentanyl, cocaine, and methamphetamine on the day of his arrest.[1] *Id.* When he was arrested, fentanyl and drug paraphernalia were allegedly found in his possession.

     Mr. Newell recognizes he has a serious drug problem, and he would like to receive treatment for his condition. He was screened and approved for placement at Crossroads, with bedspace available on November 1, 2022. *See* Pretrial Services Report Addendum (9/19/2022) at 1-2 (Dkt No. 10).

     Mr. Newell's parents—with whom Mr. Newell was living, until recently—love and support him. *See* Pretrial Services Report at 2. They know Mr. Newell needs treatment for his drug problem, and they welcome his placement in Crossroads. His parents are willing to do whatever is necessary to support Mr. Newell in his recovery. If he successfully completes treatment at Crossroads, his parents are willing to serve as a third-party custodian for him, and Mr. Newell would be welcome to return to their home. His parents are also willing to post a bond, if the Court determines one is necessary.

\*    \*    \*

     Mr. Newell is charged by Indictment with violating 21 U.S.C. § 841(a)(1) and (b)(1)(C) (distribution of a controlled substance resulting in death and serious bodily injury) and 21 U.S.C. § 843(b) (use of a communication facility in the commission of a drug offense). The allegations stem from the death of a young woman, A.M.D., in January 2022.

     Mr. Newell was arrested on September 8, 2022 and made his initial appearance the following day. *See* Minute Entry (Dkt No. 7).

     On September 22, a detention hearing was held before Magistrate Judge Willett. Minute Entry (Dkt No. 11). Pretrial Services recommended Mr. Newell's pretrial release with conditions, including mandatory inpatient substance abuse treatment. *See* Pretrial Services Report Addendum (Dkt No. 10). The government sought detention—solely

---

[1] To give the Court a sense of the scale of Mr. Newell's drug problem, he was arrested at 9:50 AM on September 8, 2022. By that time in the morning, he had already used fentanyl, methamphetamine, and cocaine.

2

based on an alleged danger to the community posed by Mr. Newell; it did not argue Mr. Newell was a flight risk or risk of non-appearance. Nevertheless, Judge Willett ordered Mr. Newell detained as both a flight risk and a danger to the community. *See* Order (Dkt No. 12). This timely motion followed.

## II.  LAW

The Bail Reform Act governs pretrial release. *See* 18 U.S.C. § 3142. The Act creates a presumption of release pending trial. *See* 18 U.S.C. § 3142(b). "Doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "[O]nly in *rare* cases should release be denied." *Id.* (emphasis added).

In certain cases, and as relevant here, a rebuttable presumption of pretrial detention exists. 18 U.S.C. § 3142(e)(3)(A). The presumption, however, places only a "light burden of production" on the defendant to proffer "some evidence" tending to rebut the presumption. *United States v. Wilks*, 15 F.4th 842, 844 (7th Cir. 2021); *see also* 783 F.2d 702, 707 (7th Cir. 1986) ("The burden of production is not a heavy one to meet.") *United States v. Jessup*, 757 F.2d 378, 380–84 (1st Cir. 1985) (holding that to meet the burden of production required for rebuttal, the defendant need only produce "some evidence" under § 3142(g)); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (same); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (same).

Once the defendant proffers some evidence that the defendant is not a danger to the community and a flight risk, the presumption is rebutted. *Wilks*, 15 F.4th at 844. The presumption does not drop out of the case entirely, but it becomes "one factor among many" considered by the Court. *Jessup*, 757 F.2d at 383; *see* 18 U.S.C. § 3142(g) (listing factors for court to consider). At all times, the burden of persuasion rests with the government. *Id*.

A person ordered detained by a magistrate may file a motion for revocation of the order with the District Court. 18 U.S.C. § 3145(b). Review is de novo. *United States v. Koening*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). "[T]he district court's review of a

3

magistrate's detention order is to be conducted without deference to the magistrate's factual findings" or "ultimate conclusion." *Id.*

### III. DISCUSSION

If Mr. Newell receives the treatment he needs at Crossroads, there is ample evidence that he is neither a flight risk nor a danger to anyone in the community. That is the sound conclusion reached by Pretrial Services in this case. *See* Dkt. No. 10. Mr. Newell respectfully requests the Court adopt that recommendation.

**A.    Substantial evidence exists to rebut the presumption of detention.**

Because Mr. Newell has been charged with an offense under the Controlled Substances Act and the offense carries a sentence of ten years or more, a rebuttable presumption of detention exists. 18 U.S.C. § 3142(e)(3). Mr. Newell thus has the "light burden" of producing "some evidence" to show he is neither a risk of nonappearance nor a danger to the community. *Wilks*, 15 F.4th at 844. Any "evidence of economic and social stability" can rebut the presumption. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Mr. Newell easily satisfies this burden. Mr. Newell has lived in the Phoenix area for nearly his entire life; his parents live here and are willing to help support him while his case is pending; Mr. Newell has a very limited criminal history, consisting entirely of misdemeanor convictions for reckless driving, possession of drug paraphernalia, and DUI. He has never been convicted of a felony, and he has no record (or even allegation of) threats, use or possession of weapons, or physical violence. Indeed, Pretrial Services believed Mr. Newell was an appropriate candidate for pretrial release and placement at Crossroads.

These facts, alone, are enough to rebut the presumption. Accordingly, the burden shifts back to the government to prove: (1) by a preponderance that Mr. Newell is a flight risk, or (2) by clear and convincing evidence that Mr. Newell is a danger to the community. As explained below, the Government cannot meet that burden.

**B.  The Government cannot meet its burden to show that Mr. Newell's appearance and the safety of the community cannot be assured by a combination of conditions.**

In deciding whether any condition or set of conditions will "reasonably assure" Mr. Newell's appearance and the safety of the community, the Bail Reform Act requires the Court to consider each of the following: the "nature and circumstances of the offense," § 3142(g)(1); the "weight of the evidence against the person," § 3142(g)(2); the "history and characteristics" of the person, § 3142(g)(3); and danger posed by release to any person or the community, § 3142(g)(4).

Taken as a whole, the factors weigh in Mr. Newell's favor.

**1.  Nature and circumstances of the offense**

Mr. Newell is alleged to have violated 21 U.S.C. § 841(a)(1), (b)(1)(C) and 21 U.S.C. § 843(b)—both crimes arise from the alleged distribution of fentanyl and methamphetamine. The first count alleges distribution resulting in the death of A.M.D. in January 2022. The second count alleges the use of an interstate communication facility—Facebook— to accomplish the offense described in the first count. He faces a statutory minimum sentence of 20 years, if convicted.

Any offense involving a death is undeniably serious; but (and even assuming the truth of the allegation, which the defense of course disputes) the death here was a tragic accident—not an intentional act of violence. Further, Mr. Newell is not alleged to have possessed any weapons, or to have threatened violence or injury to anyone.

Additionally, although the alleged incident occurred in January 2022, Mr. Newell has not fled or otherwise attempted to evade arrest or capture. He was arrested without incident on September 8, 2022.

**2.  The weight of the evidence**

"The weight of the evidence against the defendant is a factor to be considered but it is the least important of the various factors." *United States v. Townsend,* 897 F.2d 989, 994 (9th Cir. 1990). Accordingly, at this stage, Mr. Newell need not engage in a point-by-point rebuttal of all the government's evidence. *See United States v. Motamedi*, 767 F.2d 1403,

1408 (9th Cir. 1985) (explaining that "the statute neither requires nor permits a pretrial determination" of guilt).

It is sufficient, at this juncture, to note that cases like this are often complicated: these charges require specific medical and forensic analysis, as well as complicated factual investigation. The government's case is often far more complicated—and less strong—than it may otherwise seem.

### 3. History and characteristics of the person[2]

As described above, Mr. Newell has lived in Phoenix nearly his entire life; his family lives here and supports him; he was employed full-time in the restaurant industry; he has only a minor, misdemeanor criminal history, and he was not on probation or parole at the time of the offense. Additionally, there is no substantiated record for failure to appear in court.

Mr. Newell has a substance abuse problem—a problem that he acknowledges. However, with appropriate inpatient treatment and monitoring at Crossroads, every indication suggests that Mr. Newell can and will abide by the conditions of his release.[3]

### 4. Danger posed to the community by release

If Mr. Newell is released to Crossroads and receives treatment for his substance

---

[2] Under this factor, the Court assesses the following:

"(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."

18 U.S.C. § 3142(g)(3)(A), (B).

[3] Additionally, Mr. Newell suffers from a rare autoimmune disorder—Wegener's Granulomatosis. Previously, Mr. Newell required high doses of steroids and chemotherapy. The disease is currently in remission, but can reemerge, requiring additional medical treatment. Accordingly, Mr. Newell's potential need for medical treatment makes him unlikely to leave the Phoenix area.

abuse issues, Mr. Newell will not pose a danger to anyone.

Before Magistrate Judge Willett, the government sought detention solely on this basis — on the theory that, if released, Mr. Newell would resume his alleged use and distribution of fentanyl. Fentanyl is, of course, a dangerous drug. But Mr. Newell's placement in Crossroads is designed expressly to limit that danger: to help treat his substance use disorder and prevent him from using or accessing the substance. While at Crossroads, he will receive treatment for substance abuse; he will be subjected to drug testing; and he will reside at the facility, which is monitored 24 hours a day. If he violates any of those conditions, he will be subject to arrest.

Those conditions are more than sufficient to limit any danger to the community that Mr. Newell might allegedly pose.

### IV. CONCLUSION

Mr. Newell respectfully requests the Court adopt the recommendation of the Pretrial Service Officer and order Mr. Newell's pretrial release with conditions.

This motion may cause excludable delay under 18 U.S.C. § 3161(h)(1)(D).

RESPECTFULLY SUBMITTED:        October 5, 2022

JON M. SANDS
Federal Public Defender

*s/ Mark T. Rumold*
MARK T. RUMOLD
Assistant Federal Public Defender